**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| HALBERT JAMES, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No.  3:22-cv-01668-SMY |
| v. | ) ) | Hon. Judge Staci M. Yandle |
| UNIVERSAL PROTECTION SERVICE, LLC, d/b/a ALLIED UNIVERSAL SECURITY SERVICES, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION AND MEMORANDUM FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS AND COLLECTIVE ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.  Introduction ............................................................................................................1

II.  Background and Procedural History .....................................................................1

III.  Rule 23 Class Action Certification and FLSA Conditional Certification
For Settlement Purposes Only ..............................................................................3

IV.  Terms of the Proposed Settlement .......................................................................4

    A.  Payments to the Settlement Class and Collective Members ....................4

    B.  Release of Class and Collective Members who Participate in the Settlement.........5

    C.  Incentive Award .......................................................................................6

    D.  Notice to Settlement Class and Collective Members and
Settlement Administration .......................................................................6

    E.  Attorneys' Fees and Costs .......................................................................8

V.  The Court Should Grant Preliminary Approval of the Settlement Agreement....8

    A.  Federal Courts Strongly Favor and Encourage Settlement.......................8

    B.  The Criteria for Preliminary Settlement Approval are Satisfied ...........10

        1.  Numerosity.................................................................................10

        2.  Commonality..............................................................................11

        3.  Typicality ...................................................................................12

        4.  Adequacy ...................................................................................12

        5.  Predominance and Superiority...................................................13

    C.  The Settlement is Fair, Reasonable and Adequate.................................15

        1.  Strength of the Named Plaintiff's Case as Compared to the
Amount of the Settlement and Allocation of the Settlement Amount........16

        2.  Complexity, Length, and Expense of Further Litigation................17

3.  There is No Opposition to the Settlement ................................................. 18

4.  Opinion of Counsel ............................................................................ 18

5.  The Stage of the Proceedings and the Discovery Completed ................... 19

D.  The Settlement is the Result of Arm's Length Negotiations Without Any Hint of Collusion ............................................................................ 19

E.  The Parties' Proposed Notice Program is Fair and Adequate .............................. 19

F.  Named Plaintiff's Counsel Should Be Appointed as Class Counsel ................... 21

G.  Scheduling a Final Approval Hearing is Appropriate .......................................... 21

VI.  Conclusion ........................................................................................................ 22

## I.    <u>Introduction</u>

This case involves claims for unpaid wages involving a group of hourly paid security guards who worked at Defendant's Illinois facilities and locations.  Following a full-day mediation with a nationally recognized wage and hour mediator, the Parties reached a non-reversionary $950,000.00 settlement involving a class and collective of 3,109 employees.  Under the proposed settlement, and subject to the Court's approval, checks will be mailed to the settlement class after a notice period advising the employees of the settlement and their right to accept the settlement payment, exclude themselves from the settlement or object.

Under the proposed settlement, each of the 3,109 individuals in the settlement class will receive a minimum payment of $50.00.  The estimated settlement payments to be paid to the settlement class members range from $50.00 to approximately $500.00, depending on the number of full-time weeks the individual worked for Defendant during the time period of July 26, 2019 through the date of preliminary approval.

As set forth below, this settlement is fair, reasonable, and adequate. It is a reasonable resolution of a *bona fide* dispute.  Accordingly, this Court should approve this settlement.

## II.    <u>Background and Procedural History</u>

On July 26, 2022, the Named Plaintiff filed a Collective and Class Action Complaint asserting claims against Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq*. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* ("IWPCA").  (Doc. 1).  In his Complaint, the Named Plaintiff alleged that Defendant failed to pay all earned wages to a putative class and collective of hourly-paid security guards in the various states Defendant operates (the

"Litigation").[1]  (*Id.*)  On September 16, 2022, Defendant filed a motion to dismiss for failure to state a claim and for lack of jurisdiction.  (Doc. 29).  On October 31, 2022, Plaintiff filed his response to Defendant's motion to dismiss.  (Doc. 36).

Before the Court had an opportunity to rule on Defendant's motion to dismiss, the Parties agreed to mediate the alleged unpaid wage claims for Illinois security guards.  The Parties thereafter agreed to retain Steven Rottman, Esq., a nationally recognized and experienced wage and hour mediator.  On April 26, 2023, the Parties filed a joint motion to stay pending the outcome of the mediation.  (Doc. 45).  On May 9, 2023, Plaintiff filed his Amended Complaint which sought relief under the FLSA and IMWL limited to Illinois security guards (as opposed to a nationwide class).  (Doc. 48).  Plaintiff subsequently filed a Second Amended Complaint which sought relief under the FLSA and IMWL for Illinois security guards who worked for Defendant and did not sign an arbitration agreement.  (Doc. 65).

The Parties held an all-day mediation session on September 21, 2023.  The negotiations and mediation were conducted at arm's length.  Prior to the mediation, the Defendant produced payroll and clock-in and clock-out data for thousands of individuals.  Mr. Rottman assisted the Parties in reaching an agreement based on the overtime and non-overtime workweek data for the thousands of employees in the sample.  After the mediation, the Parties worked to finalize the terms of a thorough Memorandum of Understanding and then a Settlement Agreement and Release (the "Settlement Agreement"), attached hereto as Exhibit 1.

Based on the Named Plaintiff's counsel's (or "Class Counsel," as proposed below) independent investigation of the relevant facts and applicable law, experience with other wage and

---

[1] Eight individuals have filed consent to join forms in this Litigation.  Counsel have determined that each of those individuals signed an agreement to arbitrate their claims against Defendant prior to the filing of the Litigation, and the Parties intend to file a stipulation of dismissal as to those individuals.

hour class and collective cases, and the information provided by Defendant, the Settlement is fair, reasonable, adequate, and in the best interest of the individuals in the settlement class and collective.

Plaintiff now presents to the Court the Parties' Settlement Agreement. Plaintiff seeks preliminary approval of the Settlement Agreement, and requests that the Court enter an Order, substantially in the form attached hereto as Exhibit 2, that grants such relief.

## III.    Rule 23 Class Action Certification and FLSA Conditional Certification for Settlement Purposes Only

For settlement purposes only, and subject to the Court's approval, the Parties stipulate to Rule 23 certification of the following settlement class under the IMWL[2]:

> All non-exempt employees without arbitration agreements who worked for Defendant as security professionals in the state of Illinois from July 26, 2019, through the date of preliminary approval.

Ex. 1, § 2.4.

Additionally, for settlement purposes only, and subject to the Court's approval, the Parties stipulate to conditional certification of the following settlement collective under the FLSA:

> All non-exempt employees without arbitration agreements who worked for Defendant as security professionals in the state of Illinois from July 26, 2019, through the date of preliminary approval.

Ex. 1, § 2.5.

Further, the Parties stipulate and agree, for settlement purposes only, that:

a.    The number of settlement class and collective members is approximately 3,109 and,

therefore, so numerous as to make it impracticable to join all settlement class and

---

[2] Defendant does not believe that certification would be proper absent a settlement, and reserves the right, should the Court decline to grant approval of this Settlement, to contest every aspect of class action certification under Rule 23 and conditional certification under the FLSA.

collective members;

b.  There are common questions of law and fact, including, but not necessarily limited to, whether Defendant failed to pay overtime wages as required under the IMWL and the FLSA;

c.  Named Plaintiff's claims are typical of the claims of settlement class and collective members;

d.  James X. Bormes and Catherine P. Sons of Law Office of James X. Bormes, P.C., Thomas M. Ryan of Law Office of Thomas M. Ryan, P.C., and David T. Butsch and Christopher E. Roberts of Butsch Roberts & Associates LLC should be deemed "Class Counsel" and will fairly and adequately protect the interests of the settlement class and collective;

e.  The prosecution of separate actions by individual members of the settlement class and collective would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct; and

f.  Questions of law and fact common to the settlement class and collective members predominate over questions affecting individual settlement class and collective members, and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

## IV.   Terms of the Proposed Settlement

The Parties' Settlement Agreement is attached for the Court's review as Exhibit 1.  The following summarizes the Settlement Agreement's terms.

### A.   Payments to the Settlement Class and Collective Members

The Parties' Settlement Agreement provides a non-reversionary gross settlement fund of

$950,000.00 from which payments for (i) class and collective members, (ii) an incentive award, (iii) settlement administration costs, (iv) payroll taxes (excepting employer-side payroll taxes) and (v) attorneys' fees and costs will be paid.  The "Net Settlement Fund" consists of the remaining funds after subtracting payments for items (ii) – (v) above.  The Net Settlement Fund is approximately $583,333.00 and will be paid to the settlement class and collective members unless they request to exclude themselves from this Settlement.  (Ex. 1, §§ 2.26, 4.5).  The Net Settlement Fund will be allocated among the settlement class and collective members on a *pro-rata* basis based on the number of weeks during which a settlement class and collective member worked 39.5 hours or more (an "Eligible Workweek") during the period of July 26, 2019 through the date of the Preliminary Approval Order (the "Class Period").

Under the proposed settlement, each of the approximately 3,109 individuals will receive a minimum settlement payment of $50.00, even if they only worked one Eligible Workweek.  The estimated settlement payments to be paid to the settlement class members range from $50.00 to approximately $500.00, depending on the number of Eligible Workweeks the individual worked for Defendant during the Class Period.

### B.    Release of Class and Collective Members Who Participate in the Settlement

Individuals who do not opt out of the settlement will release all Illinois state law claims contained in the operative Complaint in the Action, and any additional Illinois state law wage and hour claims that could have been brought based on the facts or legal theories alleged in the operative Complaint, through the date of preliminary approval, including all claims related to performing work off-the-clock whether such work was overtime or non-overtime work.  (Ex. 1, § 5.1).  Individuals who endorse or deposit their settlement payment checks will release all FLSA claims contained in the operative Complaint in the Action, and any additional FLSA wage and

hour claims that could have been brought based on the facts or legal theories alleged in the operative Complaint, through the date of preliminary approval, including all claims related to performing work off-the-clock whether such work was overtime or non-overtime work. (*Id.*). The release does not include any claims for unpaid sick time, vacation time, or paid time off. (*Id.*). If an individual in the settlement group does not cash their check, then that person does not release any claims under the FLSA. (*Id.*). An individual who does not opt out of the settlement and does not cash their check will release their claims under Illinois state law and their share of the settlement will escheat to the State of Illinois as their unclaimed property that they can claim.

### C. Incentive Award

The Settlement Agreement also contemplates an Incentive Award to the Named Plaintiff to acknowledge his service to the settlement class and collective, including his involvement in bringing the litigation and pursuing the litigation. The Named Plaintiff and his counsel request an Incentive Award of Seven Thousand Five Hundred Dollars ($7,500.00) to the Named Plaintiff. (Ex. 1, § 4.4). This payment would be in addition to any settlement payment that the Named Plaintiff receives as a settlement class and collective member in this matter. Subject to the Court's ruling on preliminary approval, Plaintiff will move for the incentive payment via a separate request at final approval.

### D. Notice to Settlement Class and Collective Members and Settlement Administration

The proposed settlement contemplates first sending a Notice of Settlement and then, following the notice and opt-out period, issuing settlement checks to each of the 3,109 settlement class and collective members unless they exclude themselves from this case during the Exclusion Period.

Subject to the Court's approval, the Parties propose sending the settlement class and

collective members a Notice of Settlement in the form attached hereto as Exhibit 3. The Parties' proposed Notice informs the settlement class and collective members of the settlement and the estimated amount of their individual settlement payments. The proposed Notice includes all essential information about the lawsuit required under Rule 23 and the FLSA, including the nature of the action, the litigation background, the terms of the agreement, the relief provided by the Settlement Agreement, Class Counsel's request for fees and expenses, and the scope of the release and the binding nature of the settlement on the class and collective members. The Notice advises settlement class and collective members that they have the right to object or opt-out of the Settlement and describes the consequences for opting out; and will state the date and time of the final approval hearing.

The Parties have agreed to use Analytics LLC (www.analyticsllc.com) as the Settlement Administrator in this matter. The duties of the Settlement Administrator include but are not limited to: mailing the Class Notice; calculating the individual Settlement Class/FLSA Settlement Collective member settlement payments according to their number of weeks worked of 39.5 hours or more during the Class Period (subject to a minimum payment per Claimant of $50.00); researching and updating addresses through skip-traces and similar means; reporting on the status of the administration of the settlement to the Parties; resolving any settlement payment dispute, in concert with counsel for the Parties; setting up and maintaining a website which will include relevant case documents, including the Settlement Agreement and Class Notice; receiving and processing all objections and opt out requests submitted by class members; preparing a declaration regarding its due diligence in the settlement administration process; providing the Parties with all necessary data; setting up, administering and making payments from the settlement fund; distributing settlement payments and withholding any required payroll taxes and remitting such

funds to the appropriate taxing authorities, along with any associated tax reporting, return and filing requirements; and performing such additional duties as the Parties may mutually direct.

The proposed settlement administrator, Analytics LLC, estimates that the cost of the Notice process will be approximately $26,500.00. The costs associated with providing Class Notice and administering the Settlement are part of the settlement fund. (Ex. 1, §§ 2.25, 4.3). The Parties will provide the Court with a declaration from the Settlement Administrator of due diligence with regard to the mailing of the Class Notice prior to the Final Approval Hearing.

### E.    Attorneys' Fees and Costs

The Settlement Agreement provides that Class Counsel will move the Court for an award of attorneys' fees and costs. Under the Settlement Agreement, Class Counsel will seek fees in an amount not to exceed $316,667.00 (33.33% of the total settlement amount). (Ex. 1, § 4.2). Class Counsel will seek costs not to exceed Fifteen Thousand Dollars ($15,000.00). (Ex. 1, § 4.2). As set forth below, Plaintiff believes that the requested fees are reasonable and well within the fee awards approved by this Court and the Seventh Circuit.

### V.    The Court Should Grant Preliminary Approval of the Settlement Agreement

### A.    Federal Courts Strongly Favor and Encourage Settlement

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The proposed

settlement, therefore, is the best vehicle for settlement class and collective members to receive the relief to which they may be entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

MANUAL FOR COMPLEX LITIG., at § 21.632-34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg, at § 11.22 *et seq.*

District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011). With this motion, the Named Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *See* Newberg, § 11.25 at 11–36, 11–37. At the preliminary approval stage, district courts decide whether the proposed settlement falls "within the range of possible approval." *Kou Thao Vang v. KeyTronicEMS*, 2019 WL 337589, at *1 (D. Minn. Jan. 28, 2019). "Under the new Rule 23(e), in weighing a grant of

preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card*, 2019 WL 359981, at *12 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). At the formal fairness hearing, Rule 23 settlement class members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### B.    The Criteria for Preliminary Settlement Approval are Satisfied

Prior to granting preliminary approval of a proposed settlement, the Court should first determine if the proposed settlement class is appropriate for Rule 23 certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3).

This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1.    Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1).  Generally, a class that has more than 40 members satisfies this standard.  *See, e.g.*, *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *Porter v. Pipefitters Ass'n Local Union 597*, 208 F. Supp. 3d 894, 904 (N.D. Ill. 2016).

Here, Defendant has identified 3,109 people in the putative settlement class.  Thus, the numerosity requirement is easily satisfied.

### 2.   Commonality

The second prerequisite to class certification is commonality, which means that the class must share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  The rule does not require that "*every* question be common."  *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (emphasis in original).  Rule 23 only requires that the class members' claims share a common contention, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Nothing more is required to satisfy Rule 23(a)(2)."  *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015).

Here, the commonality requirement of Rule 23(a)(2) is satisfied for settlement purposes. In this case, the settlement class members are joined by the common questions of law and fact that arise from Defendant's timekeeping practices including whether Defendant required or permitted class members to work without pay before or after their shifts.  These common issues center on Defendant's timekeeping policies and procedures and satisfy the commonality requirement.  *See, e.g.*, *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) (commonality satisfied by the common question of whether defendant bank had a company-wide policy or practice requiring employees to work off-the-clock overtime hours); *Suchanek*, 764 F.3d at 756 (same).

### 3.      Typicality

Rule 23 also requires that the claims of the class representative are typical of the class members' claims.   Fed. R. Civ. P. 23(a)(3).   Typicality depends upon whether the named representative's claims have "the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).  A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other" class members and is based on the same legal theory.  *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).  A class representative need not have been injured to the same extent as other class members in order to be typical of the class.  *Chicago Teachers Union, Local 1 v. Bd. of Educ. of the City of Chicago*, 307 F.R.D. 475, 481 (N.D. Ill. 2015).

Here, the typicality requirement is satisfied (for settlement purposes) for the same reasons that Named Plaintiff's claims meet the commonality requirement.  Specifically, the Named Plaintiff's claims are typical of those of other class members because they arise from the same wage and hour, timekeeping and punctuality policies and practices of Defendant.  The claims are based on the same legal theory, *i.e.*, that Defendant's wage and hour, timekeeping and punctuality policies and practices unfairly impacted the class members.  There is a sufficient nexus between the Named Plaintiff's claims and the claims of class members and, accordingly, the typicality requirement is satisfied.  *See id.*

### 4.      Adequacy

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class."   *See* Newberg, § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the

litigation." *Id.*; *Amchem*, 521 U.S. at 625–26.  At the preliminary stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.  The Named Plaintiff is a member of the settlement class and does not possess any interests antagonistic to the settlement class.  The Named Plaintiff, like the class members, worked as an hourly paid employee for Defendant and alleges that wage and hour, timekeeping and punctuality policies and practices unfairly impacted him.  Indeed, the Named Plaintiff's claims coincide identically with the claims of the settlement class and collective, and the Named Plaintiff and the settlement class desire the same outcome of this litigation.  The Named Plaintiff has participated in the litigation and provided necessary insight to Class Counsel.

In addition, proposed Class Counsel are experienced in class and collective action litigation and have submitted declarations establishing their skills and experience in handling class and collective litigation around the country and in this District, specifically including numerous wage and hour lawsuits involving hourly employees. (Ex. 4, Decl. of James X. Bormes, ¶¶ 3-6; Ex. 5, Decl. of Thomas M. Ryan, ¶¶ 4-7).  Accordingly, the adequacy requirement is satisfied.

### 5.     **Predominance and Superiority**

In addition to meeting the prerequisites of Rule 23(a), the proposed settlement class must also meet one of the three requirements of Rule 23(b).  For certification under Rule 23(b)(3), class members must share common issues of fact or law that predominate over questions affecting individual members.  Fed. R. Civ. P. 23(b)(3).  If common questions are a "significant aspect" of a case and "can be resolved for all members of a class in a single adjudication," then predominance is satisfied.  *Porter*, 208 F. Supp. 3d at 911 (quoting *Messner*, 669 F.3d at 815).  "Common issues of fact and law predominate in particular when adjudication of questions of liability common to

the class will achieve economies of time and expense." *Chicago Teachers Union*, 797 F.3d at 444.

Here, the Named Plaintiff has alleged wage and hour, timekeeping and punctuality policies and practices of Defendant that apply to all class members. The existence of the alleged practices is a key element common to the claim of each Class Member. Although individualized issues may impact the amount of damages to which each class member is entitled, courts have found that such individualized damages do not "undermine the fact that the fundamental question that predominates is a common question." *Brand v. Comcast Corp.*, 302 F.R.D. 201, 223–24 (N.D. Ill. 2014) (finding that predominance existed, despite the possibility for varying damages among class members, because of the common question of whether a hostile work environment existed); *see also Chicago Teachers Union*, 797 F.3d at 444. For settlement purposes, the putative Class meets the predominance requirement. *See id.*

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed settlement class. Fed. R. Civ. P. 23(b)(3). A class action is superior to other methods "when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies" arising from the consolidation. *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 614 (N.D. Ill. 2009) (citing *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003)). When confronted with a settlement-only class certification, the Court need not consider "whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc.*, 521 U.S. at 620. Courts have recognized that the class action device is superior where the defendant engaged in allegedly standardized conduct and the individual class members' claims would be too small to vindicate through an individual suit. *See, e.g.*, *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008).

Here, the settlement class and collective members' claims involve the same alleged practice

by Defendant, and there are 3,109 settlement class and collective members. Separate lawsuits by the individual class members "would needlessly require multiple courts to resolve the same liability issues." *Porter*, 208 F. Supp. 3d at 912. Furthermore, given the relatively low amounts of unpaid time at issue, the backpay damages for each individual class member is not likely to be significant enough to incentivize a class member to pursue their claim independently. Therefore, the proposed class meets the superiority requirement. *See id.* The Court should certify the settlement class for settlement purposes, as the superiority requirement is satisfied, along with all other Rule 23 requirements.

### C.    The Settlement is Fair, Reasonable, and Adequate

This Court may approve a settlement binding class members if it determines, after proper notice and a public hearing, that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)-(2). In making this determination, Rule 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the proposal treats class members equitably relative to each other, and (4) the relief provided by the settlement is adequate. Fed. R. Civ. P. 23(e)(2). To that end, courts in the Seventh Circuit consider the following factors:

> (1) the strength of the plaintiff's case compared with the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby*, 75 F.3d at 1199; *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 55786932, at *5 (N.D. Ill. Oct. 28, 2019); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May

14, 2019).[3]   In evaluating these elements, courts should "consider the facts in the light most favorable to settlement."  *Isby*, 75 F.3d at 1199; *Charvat*, 2019 WL 55786932, at *5.   As demonstrated below, the class action settlement here meets all of the required criteria and clearly falls "within the range of possible approval."  *Cook v. McCarron*, No. 92 C 7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997).

### 1. Strength of the Named Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Amount

The "most important factor relevant to the fairness of a class action settlement" is the first one listed: "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement."  *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979) (citing the MANUAL FOR COMPLEX LITIG. § 1.46 at 56).  However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'"  *Isby*, 75 F.3d at 1196–97 (quoting *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)).  Accordingly, in deciding whether to approve the settlement here, the Court must focus on the general principles of fairness and reasonableness but should "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights."  *See id.*

When weighed against the strength of the Named Plaintiff's claims and the merits of Defendant's legal and factual defenses, the consideration paid by Defendant is reasonable and the plan of allocation is equitable and fair.  The Settlement provides a non-reversionary gross fund of

---

[3] Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit", which are set forth above.  *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018); see also Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").  For this reason, decisions prior to the amendment can still provide guidance to the Court.

$950,000.00 to be paid to the settlement class and collective members who do not exclude themselves, plus Defendant's payroll obligations which will not be deducted from the gross fund and will be paid separately.  The formula used to determine each Class Member's share of the settlement fund—as detailed above—is designed to result in complete distribution of the fund and is based on each Class Member's Eligible Workweeks, which ensures fairness among settlement class and collective members.  Further, each settlement class and collective member will receive a minimum payment of $50.00.  Moreover, the release is limited and only releases wage and hour claims, and if an individual does not cash their check, then that person does not release any claims under the FLSA.  (Ex. 1, § 5.1).  Settlement Checks will be mailed to each individual in the settlement group directly if the Settlement is finally approved, rather than requiring the settlement class and collective members to submit any form to claim the funds available to them.  Accordingly, the Settlement is an excellent result for the settlement class and collective members and does not place burdens on settlement class and collective members to receive payment from the Settlement.

### 2.    Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement.  *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).  Absent settlement, the Parties would be required to incur the time and expense of the Named Plaintiff pursuing class action certification of this action and, if granted, of administering notice to the members of the Class and permitting them an opportunity to opt-out of this action.  Thereafter, the Parties would be required to prepare for the burden and expense of additional written discovery, depositions of numerous witnesses (including the Named Plaintiff and a representative group of settlement class and collective members), summary

judgment motions, and possibly a trial to be conducted relating to the claims of potentially hundreds or thousands of settlement class and collective members and the defenses raised by Defendant with respect to the Class and to individual Settlement class and collective members. Post-trial litigation, including appeals, would be a near certainty. Thus, additional litigation undoubtedly would increase the expenses of this litigation but will not reduce the risks the litigation holds for the settlement class and collective members. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1019. Accordingly, the remaining burden, expenses, and risks for the Named Plaintiff and the settlement class and collective members would be substantial, as continued litigation will require resolution of complex issues at considerable expense.

### 3.    There is No Opposition to the Settlement

At this preliminary stage, Class Counsel, who currently represent the Named Plaintiff and 8 Opt-in Plaintiffs, are unaware of any objections to the Settlement, which provides an excellent result to all settlement class and collective members.

### 4.    Opinion of Counsel

Class Counsel are experienced in class action litigation and have a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement. (Ex. 4, Decl. of James X. Bormes, ¶¶ 5-6, 11-12; Ex. 5, Decl. of Thomas M. Ryan, ¶¶ 6-7, 13-16). In Class Counsel's opinion, the Settlement is fair, reasonable, and adequate. (Ex. 4, ¶ 13; Ex. 5, ¶ 15). When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *see also Meyenburg v. Exxon Mobil Corp.*, Case No. 3:05-cv-15-DGW, 2006 WL 5062697, at *5 (S.D. Ill. June 5, 2006). "[J]udges should not substitute their own judgment as to

optimal settlement terms for the judgment of the litigants and their counsel." *Veizaga v. Nat'l. Bd. for Respiratory Therapy*, Case No. 75-C-3430, 1980 U.S. Dist. LEXIS 12670, at *7 (N.D. Ill. July 14, 1980) (citing *Armstrong,* 616 F.2d at 315).

### 5.    The Stage of the Proceedings and the Discovery Completed

As explained above, this hybrid action was resolved only after more than a year of the Parties conducting significant research, data analysis for approximately 3,000 individuals, and negotiation with a neutral third-party experienced wage and hour mediator.  Thus, the stage of litigation has advanced to a state that the Parties could fully and fairly evaluate the value of the Settlement and believe it to be in the best interest of the Parties.

### D.    The Settlement is the Result of Arm's Length Negotiations Without Any Hint of Collusion

In determining whether a settlement was reached absent any collusion between the Parties, courts look to whether the settlement negotiation was "intense, vigorous, and at arm's length."  *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1020.  The significant litigation and negotiation activities in this matter demonstrate the adversarial nature of this litigation.  The Parties were able to settle this matter only after they analyzed payroll data and clock in and out data for thousands of individuals, participated in a full-day mediation with an experienced and recognized wage and hour mediator, and spent significant time negotiating and finalizing the terms of the Settlement Agreement.  Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement.  *Gillespie v. Equifax Info. Servs.*, *LLC*, Case No. 05-C-0138, 2009 U.S. Dist. LEXIS 131242, at *10 (N.D. Ill. Dec. 18, 2009).

### E.    The Parties' Proposed Notice Program is Fair and Adequate

The notice program set forth in the Settlement Agreement provides proper notice to affected individuals.  "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner

to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIG. at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

The Parties here propose to send the Notice attached as Exhibit 3 to all settlement class and collective members via U.S. mail, with the Settlement Administrator to take appropriate follow-up steps regarding Notices that are returned as undeliverable. Courts in this Circuit have approved such use of class mailing of a notice to provide notice to absent class members.[4] Courts have approved notice procedures with documents similar to the ones proposed by the Parties here because they are in a format that is easy for the Class Member to comprehend. Rule 23 requires that a court facilitate the "best notice" to class members that conveys the needed information "clearly and concisely…in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

The thorough notice proposed by the Parties is likely to be read by settlement class and collective members, and, if it is read, it is likely to be understood. In addition, if the settlement class and collective members have any questions regarding the Litigation or the Settlement, they are provided contact information for and are encouraged to contact either the Settlement Administrator or Class Counsel, both of whom can provide settlement class and collective

---

[4] *See, e.g.*, *Will v. Gen. Dynamics Corp.*, Case No. 06-698-GPM, 2010 U.S. Dist. LEXIS 95630, at *17–18 (S.D. Ill. Aug. 9, 2010); *George v. Kraft Foods Global, Inc.*, Case No. 1:08-cv-3799, 2012 U.S. Dist. LEXIS 26536, at *16–17 (N.D. Ill. Feb. 29, 2012); *EEOC v. Roadway Express, Inc.*, Case No. 06-cv-4805, 2010 U.S. Dist. LEXIS 143054, at *15–16 (N.D. Ill. Dec. 20, 2011); *Hughes v. Merit Lincoln Park, LLC*, Case No. 08-cv-6191, 2011 WL 6028535, at *2–3 (N.D. Ill. Dec. 5, 2011) (citing *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173–75 (1974)).

members with relevant documents relating to the Settlement (in addition to accessing documents through the Court's docket). Accordingly, the Parties' proposed notice procedure meets the requirements of Rule 23, and the Parties request the Court to approve the proposed Notice attached as Exhibit 3.

### F.    Named Plaintiff's Counsel Should Be Appointed as Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel…[who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, and as fully explained in Counsel's declarations, proposed Class Counsel have extensive experience prosecuting similar wage class and collective actions, including many prior actions involving similar claims against large employers. (Ex. 4, Decl. of James X. Bormes, ¶¶ 3-6; Ex. 5, Decl. of Thomas M. Ryan, ¶¶ 4-7). Further, proposed Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the investigation and litigation of those claims, and have successfully negotiated the Settlement of this matter to the benefit of the Named Plaintiff and the settlement group. (Ex. 4, ¶¶ 11-16; Ex. 5, ¶¶ 13-19). Accordingly, the Court should appoint James X. Bormes and Catherine P. Sons of Law Office of James X. Bormes, P.C., Thomas M. Ryan of Law Office of Thomas M. Ryan, P.C. and David T. Butsch and Christopher E. Roberts of Butsch Roberts & Associates LLC as "Class Counsel."

### G.    Scheduling a Final Approval Hearing is Appropriate

The last step in the settlement approval process is a final fairness hearing where the Court

may hear all evidence, objections, and argument necessary to make its final evaluation of the

Settlement. Proponents of the Settlement may explain the terms and conditions of the settlement

and offer argument in support of final approval. In addition, settlement class and collective

members may be heard in support of or in opposition to the Settlement. The Court can determine

at the Final Approval Hearing whether the Settlement should be approved, and whether to enter a

Final Approval Order and judgment under Rule 23(e). The Parties request that the Court schedule

the Final Approval Hearing at a date convenient for the Court, in approximately May 2024. Class

Counsel will file the Motion for Final Approval no later than fourteen (14) days after the end date

of the Exclusion Period.

## VI.    <u>Conclusion</u>

Based on the foregoing, the Parties respectfully request that the Court enter an order:

(1) certifying, for settlement purposes, the proposed settlement class and collective, pursuant to

Rules 23(a), (b)(3) and (e) of the Federal Rules of Civil Procedure and Section 216(b) of the FLSA;

(2) granting Preliminary Approval of the Settlement; (3) approving the Notice Program set forth

in the Settlement Agreement, and the form and content of the Notice attached as Exhibit 3; (4)

approving and ordering the opt-out and objection procedures set forth in the Settlement

Agreement; (5) appointing Named Plaintiff Halbert James as the Settlement Class Representative;

(6) appointing James X. Bormes, Catherine P. Sons, Thomas M. Ryan, David T. Butsch and

Christopher E. Roberts as Class Counsel; (7) staying all proceedings in this litigation unrelated to

the Settlement, pending Final Approval; and (8) scheduling a Final Approval Hearing at a date

convenient for the Court, and in compliance with the provisions of the Class Action Fairness Act

of 2005, 28 U.S.C. § 1715. A proposed Order preliminarily approving the Settlement is attached

as Exhibit 2.


Dated:  December 8, 2023                    Respectfully submitted,

                                            /s/ James X. Bormes
                                            One of Plaintiff's attorneys

James X. Bormes                             Thomas M. Ryan
Catherine P. Sons                          Law Office of Thomas M. Ryan, P.C.
Law Office of James X. Bormes, P.C.        35 East Wacker Drive
8 South Michigan Avenue                    Suite 650
Suite 2600                                 Chicago, Illinois 60601
Chicago, Illinois 60603                    312-726-3400
312-201-0575                               tom@tomryanlaw.com
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

David T. Butsch
Christopher E. Roberts
Butsch Roberts & Associates LLC
231 South Bemiston Ave., Suite 260
Clayton, MO  63105
Tel. (314) 863-5700
butsch@butschroberts.com
roberts@butschroberts.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on the 8th day of December, 2023, he caused the foregoing Plaintiff's Motion and Memorandum for Preliminary Approval of the Parties' Class and Collective Action Settlement to be filed via the CM/ECF system, which will cause notification of such filing to be served on all counsel of record.


<u>/s/ James X. Bormes</u>
One of Plaintiff's attorneys