## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HALBERT JAMES, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:22-cv-01668-SMY |
| v. | ) ) | Hon. Judge Staci M. Yandle |
| UNIVERSAL PROTECTION SERVICE, LLC, d/b/a ALLIED UNIVERSAL SECURITY SERVICES, | ) ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION AND MEMORANDUM FOR FINAL APPROVAL OF THE PARTIES' CLASS AND COLLECTIVE ACTION SETTLEMENT

## TABLE OF CONTENTS

**Page**

I.    Introduction ...........................................................................................................1

II.   Legal Background and Procedural History .........................................................1

III.  Summary of the Settlement Terms ......................................................................2

      A.    Class and Collective Definition ...............................................................2

      B.    Settlement Fund; Allocation of the Fund; Payments to Class and Collective
            Members ...................................................................................................2

      C.    Uncashed Checks Will Be Distributed to the Unclaimed Property Division .........3

      D.    Release of Claims ....................................................................................3

      E.    Settlement Administrator .........................................................................4

      F.    Attorney Fees, Costs, and Incentive Award.............................................4

      G.    The Notice and Claims Process Was Successful .....................................4

IV.   The Court Should Grant Final Approval ............................................................5

      A.    The Parties' Notice Program Was Fair and Adequate .............................6

      B.    Rule 23(e)(2) Factors Favor Final Approval ...........................................7

            1.    The Class Representative and Class Counsel have Adequately
                  Represented the Proposed Settlement Class – Rule 23(e)(2)(A) ...............7

            2.    The Settlement is the Product of Arm's-Length, Non-Collusive
                  Negotiations – Rule 23(e)(2)(B) ..................................................8

            3.    The Relief Secured for the Settlement Class Warrants Final Approval –
                  Rule 23(e)(2)(C)...........................................................................9

            4.    The Settlement Treats Members of the Respective Settlement Class
                  Equally – Rule 23(e)(2)(D)..........................................................11

      C.    Seventh Circuit Case Law Supports Final Approval ..............................12

            1.    Strength of the Case for Plaintiff and the Settlement Class on the

Merits, Balanced Against the Extent of the Settlement Offer, and the
Complexity, Length, and Expense of Further Litigation ...........................12

2.    The Amount of Opposition to the Settlement and Reaction of Class
Members to the Settlement .......................................................................12

3.    Opinion of Competent Counsel ................................................................13

4.    The Stage of Proceedings and the Amount of Discovery Completed .......14

V.    Conclusion ...........................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page**

### CASES

*Abbott v. Lockheed Martin Corp.,*
  2015 WL 4398475 (S.D. Ill. July 17, 2015)...................................................11

*Americana Art China, Co., Inc. v. Foxfire Printing and Packaging, Inc.,*
  743 F.3d 243, 247 (7th Cir. 2014)..............................................................6

*Boeing Co. v. Van Gemert,*
  444 U.S. 472, 478 (1980) ...........................................................................4

*Briggs v. PNC Financial Services Group, Inc.,*
  No. 1:15-cv-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016) ...................9

*Briggs v. PNC Financial Services Group, Inc.,*
  2016 WL 7018566, at *2 (N.D. Ill. May 1, 2017) ...................................13

*Castillo v. Noodles & Co.,*
  2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) ...................................13

*Chambers v. Chase,*
  No. 11 cv 6014, Doc. No. 73 (N.D. Ill., Aug. 14, 2013)...........................7

*Cook v. Niedert,*
  142 F.3d 1004, 1013 (7th Cir. 1998)....................................................6, 12

*Dobbs v. DePuy Orthopaedics, Inc.,*
  885 F.3d 455, 459 (7th Cir. 2018)..........................................................8

*Evans v. Jeff D.,*
  475 U.S. 717, 733-34, 738 n. 30 (1986)……………………………………… 4

*Furman v. At Home Stores LLC,*
  NO. 2017 WL 1730995, at *3 (N.D. Ill. May 1, 2017)............................13

*Gaskill v. Gordon,*
  160 F.3d 361, 362 (7th Cir. 1998)........................................................8, 9

*Gehrich v. Chase Bank, N.A.,*
  316 F.R.D. 215, 235 (N.D. Ill. 2016) .....................................................5

*Hale v. State Farm Mut. Auto. Ins. Co.,*
  No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. 2018) ..................7

*Heekin v. Anthem, Inc.,*
  No. 05-1908, 2012 WL 5878032, at *4 n.2 (S.D. Ind. Nov. 20, 2012).......5

*In re Cap. One Tel. Consumer Prot. Act Litig.,*
  80 F. Sup. 3d 781, 796 (N.D. Ill. 2015) ................................................5

*In re Diary Farmers of Am., Inc.,*
 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) ...................................................................................9

*In re Synthroid Mktg. Litig.,*
 264 F.3d at 719 ....................................................................................................................4, 11, 12

*Kirchoff v. Flynn,*
 786 F.2d 320, 324 (7th Cir. 1986) ........................................................................................7

*Kolinek v. Walgreen Co.,*
 311 F.R.D. 483, 500-501 (N.D. Ill. 2015) ..........................................................................6, 7

*Koszyk v. Country Fin.,*
 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) ...........................................................14

*Matter of Cont'l Ill. Sec. Litig.,*
 962 F.2d 566, 570 (7th Cir. 1992) ........................................................................................11

*Meyenberg v. Exxon Mobil Corp.,*
 2006 U.S. Dist. LEXIS 52962 at *5 (S.D. Ill., July 31, 2006) ............................................8

*McDaniel Qwest Commc'ns Corp.,*
 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) .....................................................................9

*McKinnie v. JP Morgan Chase Bank, N.A.,*
 678 F. Supp. 2d 806, 814-15 (E.D. Wis. 2009) ...................................................................6

*Nimely v. Randstad General Partners (US), LLC,*
 NO. 12-cv-10431, Doc. NO. 85 (N.D. Ill. Mar. 25, 2014) ..................................................7, 8

*Prena v. BMO Fin. Corp.,*
 NO. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) .................................7, 9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
 No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ....................................9

*Schulte v. Fifth Third,*
 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) ...........................................................................5

*Skelton v. General Motors,*
 860 F.2d 250, 252 (7th Cir. 1988) ........................................................................................4

*Spegon v. Catholic Bishop of Chicago,*
 175 F.3d 544, 550 (7th Cir. 1999) ........................................................................................3

*Sutton v. Bernard,*
 504 F.3d 688, 692 (7th Cir. 2007) ........................................................................................4, 6, 10

*Taubenfeld v. AON,*
 415 F.3d 597, 599 (7th Cir. 2005) ........................................................................................5, 8, 10

*Williams v. Gen. Elec. Cap. Auto Lease,*
 No. 94-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995) .........................................6

*Williams v. MGM-Pathe Communications Co.,*

129 F.3d 1026, 1027 (9th Cir. 1997)…………………………………………………………… 4

*Williams v. Illinois Title Loans, Inc.,*
  13 CH 24303 (Circuit Court of Cook County, Nov. 24, 2014) ..............................................7, 8

*Williams v. Rohm & Haas Pension,*
  658 F.3d 629, 635-36 (7th Cir. 2011) ....................................................................................5

*Williams-Green v. J. Alexander's Restaurants, Inc.,*
  No. 09-cv-5707, Doc. No. 138 (N.D. Ill., Dec. 21, 2012).......................................................7, 8

## STATUTES

29 U.S.C. § 216(b) .........................................................................................................3

820 ILCS § 105/12(a) .....................................................................................................3

## MISCELLANEOUS

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,*
  7 J. Empirical L. Stud. 811, 814, (2010) ..............................................................................7

Newberg on Class Actions § 15.83 (5th ed.) ...................................................................9

v

## I.     Introduction

On January 5, 2024, the Court granted preliminary approval of the Parties' non-reversionary $950,000.00[1] class and collective action settlement under the Illinois Minimum Wage Law and the Fair Labor Standards Act.  (ECF No. 70).  No Settlement Class Member objected to the Settlement and only three individuals requested to be excluded.  The estimated settlement payments to each of the 3,109 settlement class members range from $50.00 to approximately $500.00, depending on the number of full-time weeks the individual worked for Defendant during the time period of July 26, 2019 through January 5, 2024 (the date of preliminary approval). Each Settlement Class Member will receive at least $50.00, even if they only worked one full-time week during the time period above.  The Settlement Class Members were not required to take any action or submit a claim form to receive a payment under the Settlement.  All Settlement Class Members who did not exclude themselves will automatically receive a settlement payment if the Court grants final approval of the Settlement.

After the Court entered its Order granting preliminary approval, the Settlement Administrator issued the Notice of Settlement.  The Notice informed Settlement Class Members of their rights under the settlement: the right to participate in the settlement, the right to request to be excluded from the Settlement, and the right to object to the fairness of the Settlement.

## II.    Legal Background and Procedural History

Plaintiff set forth the legal background and procedural history of this case in his Motion and Memorandum for Preliminary Approval (ECF No. 68, p1-3).  In sum, Plaintiff alleged that Defendant failed to pay all earned wages to a putative class and collective of hourly-paid security

---

[1] During the Notice process, the total number of Settlement Class Members increased by three individuals. Pursuant to the terms of the Settlement Agreement, the total Settlement amount increased by $150.00 for each individual, thereby making the final total fund $950,450.00.  (Ex. 1, Sett. Agree., §§ 2.25, 4.1).

guards in the various states Defendant operates.  Defendant has denied all liability in this case, denied that its wage policies and practices were improper, and denied that it owes any wages to anyone based on the alleged claims.  Defendant further denied that class or collective certification is proper or suitable.  The Parties engaged in a full-day mediation with a nationally recognized wage and hour mediator, Steven Rottman, Esq., and ultimately reached a resolution on behalf of security guards without arbitration agreements that Defendant employed in Illinois.  This Court preliminarily approved the Parties' settlement on January 5, 2024.  (ECF No. 70).

### III.    Summary of the Settlement Terms

The settlement terms are summarized below.

#### A.    Class and Collective Definitions (Ex. 1, Sett. Agree., § 2.4, 2.5)

The Settlement Class Representative seeks final approval of the following Rule 23 class:

> All non-exempt employees without arbitration agreements who worked for Defendant as security professionals in the state of Illinois from July 26, 2019, through the date of preliminary approval.

The Settlement Class Representative seeks final approval of the following collective under the Fair Labor Standards Act ("FLSA"):

> All non-exempt employees without arbitration agreements who worked for Defendant as security professionals in the state of Illinois from July 26, 2019, through the date of preliminary approval.

The Court previously conditionally certified the above-defined class and collective.  (ECF No. 70, ¶¶ 3, 4).

#### B.    Settlement Fund; Allocation of the Fund; Payments to Class and Collective Members (Ex. 1, Sett. Agree., §§ Ex. 1, §§ 2.26, 4.1, 4.5)

While denying all liability and wrongdoing, Defendant has agreed to pay a non-reversionary "Gross Fund" of $950,450.00 from which payments for (i) class and collective members, (ii) an incentive award, (iii) settlement administration costs, (iv) payroll taxes (excepting

employer-side payroll taxes) and (v) attorneys' fees and costs will be paid.  None of the Gross Fund shall revert back to Defendant.  The "Net Settlement Fund" consists of the remaining funds after subtracting payments for items (ii) – (v) above. The Net Settlement Fund is approximately $584,434.00 and will be fully distributed to the settlement participants. (Ex. 1, §§ 2.26, 4.1, 4.5).

The Net Settlement Fund will be allocated among the Settlement Class Members on a *pro-rata* basis based on their number of Eligible Workweeks, which is defined as the number of weeks during which a Settlement Class Member worked 39.5 hours or more during the time period of July 26, 2019 through January 5, 2024.

Under the proposed settlement, participants will receive a minimum settlement payment of $50.00, even if they only worked one Eligible Workweek. The estimated settlement payments to be paid to the settlement class members range from $50.00 to approximately $500.00, depending on the number of Eligible Workweeks the individual worked for Defendant.

### C.    Uncashed Checks Will Be Distributed to the Unclaimed Property Division
(Ex. 1, Sett. Agree., §§ 2.25, 4.7)

Settlement Class Participants will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to the Unclaimed Property Division of the Illinois Treasurer's Office. This will enable Settlement Class Participants to request and obtain their settlement payments if they miss the check cashing deadline. *See* https://icash.illinoistreasurer.gov/app/faq-general (last visited June 21, 2022) (Illinois "serves as a custodian of the assets [of unclaimed property] and never takes ownership of them.").

### D.    Release of Claims (Ex. 1, Sett. Agree., § 5.1)

In exchange for a settlement payment, a Settlement Class Member releases wage and hour claims during the time they worked for Defendant through January 5, 2024, except for claims for paid time off, sick time, or vacation time, which are excluded from the released claims. (Ex. 1, §

5.1). Additionally, Settlement Class Members release claims under the FLSA only upon cashing their check. (*Id*.). A Settlement Class Member who does not cash a check will nevertheless waive claims under the Illinois Minimum Wage Law and their share of the settlement will escheat to the State of Illinois as unclaimed property that they can claim at any time.

  **E.**  **Settlement Administrator** (Ex. 1, Sett. Agree., §§ 3.3, 4.3)

  Analytics Consulting, LLC ("Settlement Administrator") has administered the Notice process and will administer the remainder of the Settlement including issuing the settlement checks. The Settlement Administrator's estimated costs are $25,849.00. (Ex. 2, Settlement Administrator Decl. ¶ 14).

  **F.**  **Attorney Fees, Costs, and Incentive Award** (Ex. 1, Sett. Agree., §§ 4.2, 4.4)

  Consistent with the Settlement Agreement and Notice to Settlement Class Members, Plaintiff has filed a Motion for Attorney Fees ($316,817.00), Settlement Administrator's Costs ($25,849.00), Litigation Costs ($15,000.00)[2] and an Incentive Award ($7,500.00) for the Named Plaintiff. As set forth in the separate Motion, the requested fees, costs and incentive award are reasonable and appropriate.

  **G.**  **The Notice and Claims Process Was Successful**
    (Ex. 1, Sett. Agree., §§ 3.3, 3.4)

  After the Court granted preliminary approval of the Parties' settlement, Defendant provided Analytics Consulting, LLC with the Class List in the form of a spreadsheet. (Ex. 2, Mitchell Decl., ¶ 6). The spreadsheet included 3,112 employee names and last known mailing addresses, amongst other information. (*Id*.). Analytics imported the file to create a project-specific database and processed the records through the US Postal Service's NCOA database to standardize and update the mailing addresses. (*Id*., ¶ 7). On February 5, 2024, Analytics mailed by first-class

---

[2] Plaintiff's litigation costs total $15,300.95.

mail the "Notice of Proposed Class and Collective Action Settlement" ("Notice") to the 3,112 Class Members in the Class List. A template of the Notice is attached as Exhibit A to the Administrator's Declaration. (*Id*., ¶ 8). Since February 5, 2024, Analytics has hosted a website at www.universalprotectionwagecase.com for Class Members to provide Settlement information. (*Id*., ¶ 9).

As of April 23, 2024, 30 Notices to Class Members have been returned to Analytics by the U.S. Postal Service with a forwarding address. (*Id*., ¶ 10). Analytics updated the class list with the forwarding address and processed a re-mail of the Notice to the updated address. (*Id*.). As of April 23, 2024, Analytics received 255 Notices that have been returned as undeliverable. (*Id*., ¶ 11). Analytics performed an address trace on undeliverable notices and located an updated address for 185 Class Members. (*Id*.). Analytics processed a re-mail of the Notice to the affected Class Members. (*Id*.). To date, Analytics has received three requests for exclusion. (*Id*., ¶ 12). Those individuals are listed in the Declaration. (*Id*. at ¶ 12, fn. 1). To date, Analytics has not received any objections. (*Id*., ¶ 13).

## IV.    The Court Should Grant Final Approval

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class…may be settled…only with the court's approval…after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each

other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal quotations omitted); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019); *Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019).

As will be addressed below, the factors in Rule 23(e)(2) and the corresponding factors the Seventh Circuit has identified demonstrate that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A.    The Parties' Notice Program was Fair and Adequate

The notice process in the Settlement Agreement was designed to provide proper notice to affected individuals.  "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner

to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312.  Many of the same considerations govern both certification and settlement notices.  In order to protect the rights of absent class members, a court must require the best notice practicable to class members.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The Court previously approved the form and content of the notice of settlement.  (ECF No. 70, ¶ 8).  The Parties' effort to effectuate notice by mail and by website to the Settlement Class Members meets the requirements of Rule 23(c)(2)(B).  It is well established that notice mailed to last-known addresses of class and collective members satisfies due process and constitutes "the best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Williams v. AmerisourceBergen*, No. 17 cv 6071 (N.D. Ill. Nov. 15, 2018; ECF No. 51); *Hughes v. Merit Lincoln Park, LLC*, 2001 U.S. Dist. LEXIS 139231 at *7-8 (N.D. Ill. Dec. 5, 2011).  Overall, the notice plan and process was highly successful and well exceeds that required for due process and Rule 23(c)(2)(B).

### B.    Rule 23(e)(2) Factors Favor Final Approval

#### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class – Rule 23(e)(2)(A)

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill.

May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery of facts and potential damages"). In considering this factor, courts examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Here, Class Counsel and the Settlement Class Representative pursued this case vigorously on behalf of the potential class.  The Parties reached a settlement only after motion practice, conducting significant research and data analysis for approximately 3,000 individuals. The Parties retained a nationally recognized wage and hour mediator, Steven Rottman, Esq., to assist them in resolving the lawsuit. The Parties participated in a full-day mediation session on September 21, 2023. The negotiations and mediation were conducted at arm's length. Prior to the mediation, Defendant produced payroll and clock-in and -out data for thousands of individuals. The mediator assisted the Parties in reaching an agreement on the substantive terms of the Settlement. After the mediation, the Parties worked to finalize and memorialize the terms of the Settlement Agreement and Release (the "Settlement Agreement") (attached hereto as Exhibit 1).  Consistent with Rule 23(e)(2)(A), the Class Representative and Class Counsel have adequately and effectively represented the Class.

### 2.    The Settlement is the Product of Arm's-Length, Non-Collusive Negotiations – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel, with the assistance of a neutral and nationally recognized mediator, Steven Rottman, Esq.  The Settlement

was the opposite of collusive.  In deciding whether a settlement was the product of collusion between the Parties, courts look to whether the settlement negotiations were "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1020. The significant litigation and negotiation activities in this matter demonstrate the adversarial nature of this lawsuit. The Parties were able to settle this matter only after they engaged in informal discovery, analyzed payroll data and clock in and out data for thousands of individuals, participated in a full-day and adversarial mediation with an experienced and recognized wage and hour mediator, and spent significant time negotiating, memorializing and finalizing the terms of the Settlement Agreement. Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Gillespie v. Equifax Info. Servs.*, *LLC*, Case No. 05-C-0138, 2009 U.S. Dist. LEXIS 131242, at *10 (N.D. Ill. Dec. 18, 2009).

### 3.    Relief Secured for the Settlement Class Warrants Final Approval – Rule 23(e)(2)(C)

Rule 23(e)(2)(C) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *Id.* This analysis necessarily encompasses two of the *Wong* factors.  "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

Here, absent settlement, the litigation of this case would necessarily involve great costs and risks given the factual and legal issues asserted by the Parties and the additional discovery that

would have inevitably been undertaken pre-certification which would include extensive written discovery, the production of tens of thousands of documents, and many depositions of both fact and expert witnesses.  Absent settlement, the Parties would be required to incur the time and expense of Named Plaintiff pursuing class and/or collective action certification and, if granted, of administering notice to the members of the class and/or collective and permitting them an opportunity to opt-out of or opt-into this action. Thereafter, the Parties would be required to prepare for the burden and expense of additional written discovery, depositions of numerous witnesses (including a representative group of opt-in plaintiffs and Settlement Class Members), summary judgment motions, and possibly a trial to be conducted relating to the claims of potentially thousands of Settlement Class Members and the defenses raised by Defendant. Post-trial litigation, including appeals, would be a near certainty. Thus, additional litigation undoubtedly would increase the expenses of this litigation but will not reduce the risks the litigation holds for the Settlement Class Members. *See Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *see also In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1019. The remaining burden, expenses, and risks for the Named Plaintiff and the Settlement Class Members would be substantial, as continued litigation will require resolution of complex issues at considerable expense.

Additionally, continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

Moreover, based on its defenses, Defendant could have defeated or greatly reduced any recovery in this lawsuit. Instead of further risks and delay, this Settlement offers immediate and substantial value relative to the strength of Plaintiffs' claims.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii) and the first Seventh Circuit factor. An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." William B. Rubenstein, 4 *Newberg on Class Actions* § 13:53. This Settlement requires full distribution of the Net Fund directly to Settlement Class Members, with no reversion. This is an optimal method of distributing relief to the class and fully satisfies Rule 23(e)(2)(C)(ii).

The third sub-factor under Rule 23(e)(2)(C) is the adequacy of the relief provided to the class, taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). As Settlement Class Counsel explain in their request for fees and costs, their request for one-third (1/3) of the Gross Fund is in-line with the Seventh Circuit precedent and is equal to or below the fees awarded in other class settlements, including similar wage and hour class settlements.

The fourth and final factor under Rule 23(e)(2)(C), which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable. The written Settlement Agreement represents the entirety of the proposed Settlement.

### 4.    The Settlement Treats Members of Respective Settlement Class Equally – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards to Settlement Class Members that are based on the number of full-time workweeks each person worked during the

relevant time frame and all Settlement Class Members are eligible for a minimum payment of $50.00. (Ex. 1, Sett. Agree., § 4.5).

### C. Seventh Circuit Case Law Supports Final Approval

#### 1. Strength of the Case for Plaintiff and the Settlement Class on the Merits, Balanced Against the Extent of the Settlement Offer, and the Complexity, Length, and Expense of Further Litigation

The Settlement here is also strong because Defendant could have obtained a victory or greatly reduced the potential class recovery based on its defenses in the lawsuit. Regardless of the outcome of the defenses, if the litigation had continued, it would have been complex, expensive, and protracted. The Parties would have completed written discovery and taken depositions of several party witnesses. Plaintiff would then have produced an expert witness report regarding how Defendant did not accurately record the employees' actual work times. This likely would have resulted in Defendant hiring its own expert witness. Following that additional discovery, the Parties would have briefed motions for class and/or collective certification and summary judgment. If the case proceeded through a judgment, the losing party likely would have appealed given the lack of controlling precedent on the key legal disputes. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant and guaranteed monetary relief to Settlement Class Members now.

#### 2. The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlement

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *6. Here, the Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Settlement Agreement, and the objection and exclusion deadlines have passed without a single person objecting to the Settlement. That not one person has objected to the Settlement is powerful

evidence of the Settlement Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate").

No objections and only three requests to be excluded is perhaps the best evidence that the Settlement is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000)(the fact that "99.9% of class members have neither opted-out nor filed objections to the proposed settlement…[is] strong circumstantial evidence favoring settlement.").

### 3.    Opinion of Competent Counsel

Settlement Class Counsel are experienced and skilled attorneys who have been appointed lead or co-lead counsel in dozens of class actions in federal and state courts. (Ex. 3, Bormes Decl. at ¶¶ 6-7; Ex. 4, Ryan Decl. at ¶ 7). In this case, Settlement Class Counsel became familiar with the particular issues of this case by engaging in informal discovery, reviewing documents, analyzing payroll and timekeeping data for thousands of individuals, preparing for and engaging in a full day mediation with a nationally recognized wage and hour mediator, and negotiating a favorable resolution at the mediation. By their actions in this case and relevant experience, Settlement Class Counsel believe this is a fair and reasonable resolution of a *bona fide* dispute. (Ex. 3, Bormes Decl. at ¶¶ 14-21; Ex. 4, Ryan Decl. at ¶¶ 17, 19). When experienced counsel

supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F.Supp.2d at 1020; *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982)(courts are "entitled to rely heavily on the opinion of competent counsel."); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).

    **4.**    **The Stage of Proceedings and the Amount of Discovery Completed**

This case was resolved only after over a year of adversarial litigation, the analysis of payroll and timekeeping data for thousands of individuals, and a full-day mediation. Thus, the stage of litigation has advanced to a state that Class Counsel can fully and fairly evaluate the value of the settlement.

**V.**    **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the Parties' Settlement and such other relief as the Court deems appropriate. A proposed Final Approval Order is attached hereto as Exhibit 5.

Dated: April 25, 2024        Respectfully submitted,

                                      /s/ James X. Bormes
                                      One of Plaintiff's attorneys

James X. Bormes                Thomas M. Ryan
Catherine P. Sons            Law Office of Thomas M. Ryan, P.C.
Law Office of James X. Bormes, P.C.    35 East Wacker Drive
8 South Michigan Avenue        Suite 650
Suite 2600                   Chicago, Illinois 60601
Chicago, Illinois 60603        312-726-3400
312-201-0575                 tom@tomryanlaw.com
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

David T. Butsch
Christopher E. Roberts
Butsch Roberts & Associates LLC
231 South Bemiston Ave., Suite 260
Clayton, MO  63105
Tel. (314) 863-5700
butsch@butschroberts.com
roberts@butschroberts.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on April 25, 2024, he caused the foregoing Plaintiff's Motion and Memorandum for Final Approval of the Parties' Class and Collective Action Settlement to be filed via the CM/ECF system, which will cause notification of such filing to be served on all counsel of record.


<u>/s/ James X. Bormes</u>
One of Plaintiff's attorneys